BYE, Circuit Judge,
dissenting.
I would affirm the district court’s order granting the Appellees (hereinafter “students”) a permanent injunction from Appellants’ (hereinafter “Linn State”) suspi-cionless drug-testing policy for all but five of Linn State’s academic programs because the district court’s program-by-program analysis is correct and Linn State failed to present sufficient evidence demonstrating a special need for drug testing. Based on the evidence presented, the district court did not abuse its discretion. I therefore respectfully dissent.
I
The district court did not abuse its discretion by conducting a program-by-program analysis because this approach is consistent with our instructions in Barrett v. Claycomb, 705 F.3d 315 (8th Cir.2013). In Barrett we held “some college students that attend Linn State have a diminished expectation of privacy.” Id. at 323 (emphasis added). This Court’s use of the words “some college students” can only be interpreted as meaning not all of Linn State’s students have a diminished expectation of privacy. Therefore, this Court tasked the district court with sifting through Linn State’s twenty-eight distinct academic programs to determine which programs “pos[ed] significant safety risks to others.” Id. By closely analyzing Linn State’s academic curriculum program by program, the district court followed our instructions in Barrett.
The district court’s approach is also consistent with the nature of an as-applied constitutional challenge. In Barrett this Court held Linn State’s suspicionless drug testing policy was facially constitutional. The question presented to us today is fundamentally different as we must determine the constitutionality of Linn State’s suspi-cionless drug testing policy as-applied. This distinction is significant — we analyze facial challenges broadly to determine whether a statute or policy as written is constitutional under most circumstances whereas we evaluate as-applied challenges by applying the statute or policy to the particular person in their particular circumstance to determine constitutionality. See, e.g., Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (“[A] plaintiff can only succeed in a facial challenge by establishing] that no set of circumstances exists under which the Act would be valid.”) (internal quotations omitted); United States v. Stephens, 594 F.3d 1033, 1039-40 (8th Cir.2010) (holding the record did not contain enough facts to determine whether the statute was constitutional as applied to the particular facts and circumstances of the case).
The facts of this case exemplify why the district court’s program-by-program analysis was required for this as-applied constitutional challenge. This Court’s facial analysis in Barrett makes clear that not all Linn State programs warrant drug testing. Subsequently, the purpose of the district court’s analysis was to reveal which specific Linn State programs required drug testing. The district court correctly performed this exact analysis by applying Linn State’s drug-testing policy to the individual settings of the twenty-eight distinct programs and ultimately determined only five programs justified drug testing. In contrast, the majority applies Linn State’s drug testing policy to the entire 1100-1200 student body as one homogenous mass to assess overall constitutionali *928 ty. In this all-or-nothing analysis, the majority concludes drug testing is warranted for all students. The majority’s broad approach is misplaced: it is more akin to a facial analysis, and it ignores this Court’s findings in Barrett.
For the reasons stated above, I agree with the district court’s program-by-program approach.
II
I think it is inappropriate to analyze Linn State’s policy at a campus-wide level, but because the majority does so, and because I disagree with their analysis, I will analyze the campus-wide policy under governing Fourth Amendment law. Accordingly, to determine whether Linn State’s drug-testing policy is constitutional, it is undisputed the Fourth Amendment two-step balancing test applies. Linn State is first required to establish a special need for its policy. Barrett, 705 F.3d at 324. Once a special need is proffered it is balanced against three factors: (1) the nature of the privacy interest; (2) the character of intrusion; and (3) the nature and immediacy of the governmental concern and efficacy of the policy. Id. (citing Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cty. v. Earls, 536 U.S. 822, 830, 832, 834, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002)).
A. Special Need
Operating under the framework discussed in Part I, Linn State has only met its burden of demonstrating a drug-related public safety concern for five academic programs. The Supreme Court cautioned when “public safety is not genuinely in jeopardy, the Fourth Amendment precludes the suspieionless search, no matter how conveniently arranged.” Chandler v. Miller, 520 U.S. 305, 323, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997). Accordingly, Linn State had the burden of establishing its academic programs posed a genuine public safety risk. Linn State met this burden for five academic programs because it demonstrated the particular program presented a concrete risk of injury to others in the vicinity or simply that drug testing was the industry norm. Linn State failed to prove how the remaining twenty-three programs placed public safety genuinely in jeopardy.
Further, we must be prudent in analyzing a generalized drug-related public safety justification for an exception to the Fourth Amendment. In reviewing the record, it is clear “public safety” is just one of several reasons the Board cited for enacting the drug-testing policy. For example, the six “Program Goals” adopted by the Board, the advisory committee minutes, and testimony from Board members all reveal non-safety motivations for Linn State implementing the drug-testing policy, including: to improve retention and graduation rates, to “up enrollment numbers,” to appeal to students’ parents because “parents want their kids to attend a school that enforces a drug-free environment,” and to prepare students for employment in fields in which drug screening might be required. While these rationales may be valid from a business perspective, they do not provide permissible exceptions to the Fourth Amendment. In light of these additional motivations, I view Linn State’s public safety proclamation with skepticism and ultimately do not believe it provided sufficient evidence to demonstrate public safety is genuinely in jeopardy to justify constitutional infringement.
For those reasons, I believe the ' evidence presented is insufficient to support Linn State’s proffered generalized special need of public safety.
B. Balancing Test
Although I believe we need not reach the balancing test, the majority does. *929 Even assuming Linn State met its burden of demonstrating a special need, the drug-testing program cannot withstand the three-prong balancing test. See Barrett, 705 F.3d at 324.
1. Nature of the Privacy Interest
We start from the position that adults have a strong Fourth Amendment privacy interest in being free from warrantless search and seizure. The majority discounts this position by attempting to analogize the privacy interests of high school students as being consistent with the privacy interests of adult college students.[7] Second, the majority erodes Fourth Amendment protections even further by rendering the mere possibility of cross enrollment between programs as being enough evidence to justify drug testing for all students.
First, the majority seems to argue Earls, 536 U.S. 822, 122 S.Ct. 2559, Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), and Miller v. Wilkes, 172 F.3d 574 (8th Cir.1999) can be interpreted as standing for the proposition that students, regardless of age and level of education, have a diminished expectation of privacy given the tutelary nature of being a student. I strongly disagree. Drug testing was found to be constitutional in Earls, Vemonia, and Miller because the individuals affected were children that happen to be high school students. See Earls, 536 U.S. at 824, 122 S.Ct. 2559 (“The need to prevent and deter the substantial harm of childhood drug use provides the necessary immediacy for a school [drug] testing policy.” (emphasis added)); Vernonia, 515 U.S. at 649, 115 S.Ct. 2386 (holding drug testing high school student athletes was constitutional); Miller, 172 F.3d at 582 (holding random drug testing of students ‘ between grades seven and twelve was constitutional). Here, Linn State’s suspicionless drug-testing policy affects adults who happen to be college students. This is a distinction with a difference because adults are entitled to greater protections of their privacy interests than are children. The majority is extending the scope of the holdings in Earls, Vemonia, and Miller to assert the dispositive factor in determining the constitutionality of drug testing is whether the individuals have student status as opposed to whether the student is an adult or child. I believe such an extension is erroneous and overreaching.
Second, Linn State did not meet its burden of demonstrating students’ cross enrollment across Linn State’s academic programs presents a safety concern justifying a Fourth Amendment exception. The majority accepts Linn State’s assertion that because some programs require a diminished expectation of privacy and students may freely cross enroll into any Linn State program then all students must have a diminished expectation of privacy for the safety concerns associated with cross enrollment. It is undisputed Linn States carries the burden of demonstrating a recognized exception to the Fourth Amendment including that cross enrollment establishes enough of a safety concern to permit exception. See Der v. Connolly, 666 F.3d 1120, 1127-29 (8th Cir.2012); see also Chandler, 520 U.S. at 319, 117 S.Ct. 1295. Here, not only did Linn State fail to present any evidence of students engaged in cross enrollment but, more egregiously, Linn State submitted it did not even have *930 to. Appellants’ Br. at 32-33 (“[S]urely the school is in a position to know whether cross enrollment' actually happens, without having to present student-specific occasions of it.” (emphasis added)). Accordingly, it is clear Linn State did not meet its burden of proof and the mere possibility of cross enrollment is insufficient to justify a Fourth Amendment exception.
For those reasons, I find the majority is incorrect in determining adult college students have a diminished expectation of privacy just because they have student status and may cross enroll in programs requiring drug testing.
2. Character of Intrusion
In Barrett, this Court found relevant, “Linn State’s written procedures inform the students that the testing will be conducted in accordance with federal drug-testing procedures outlined in 49 C.F.R. Part 40, which ‘significantly minimize the program’s intrusion on privacy interests.’ ” Barrett, 705 F.3d at 323 (quoting Nat’l Treasury Emps. Union v. Von Raab, 489 U.S. 656, 672 n. 2, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989)). The majority relies on Barrett in concluding the analysis remains unchanged in this as-applied challenge because “[t]he procedures in place significantly minimize the intrusiveness of Linn State’s drug-testing policy.” However, Linn State’s drug-testing policy does not comport with federal drug-testing procedures and therefore the majority errs in holding the federal procedures in place significantly minimize the intrusiveness of the drug-testing policy.
Linn State’s testing procedures differ from federal testing procedures in a number of ways but most egregious is Linn State’s parental notification clause which permits a student’s drug-test results to be shared with a third party — namely parents. This is unlike federal drug-testing procedures which require strict confidentiality of test results. There is a greater invasion of privacy when drug test results are capable of being shared with a third party. See Ferguson v. City of Charleston, 532 U.S. 67, 68, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001); Lebron v. Wilkins, 820 F.Supp.2d 1273, 1283 (M.D.Fla.2011) (finding a “far more substantial” invasion of privacy when positive drug tests resulting from the collection of urine samples are shared with third parties). Although Linn State asserts its drug-testing policy remains non-invasive because there is no evidence to demonstrate it has notified a parent, this argument' is without merit. Regardless of whether Linn State has previously notified a third party, the ability to do so remains. Therefore, Linn State’s mere ability to notify a third party automatically results in a greater invasion of privacy than what was found acceptable by this Court in Barrett.
I therefore believe the majority erred in relying on our facial analysis in Barrett to conclude the character of intrusion remains unchanged in this as-applied challenge. In actuality, Linn State’s drug-testing policy as-applied is more invasive than the federal procedures with which it claims to comply. Accordingly, Linn State’s drug-testing policy is a substantial invasion of privacy.
3. Nature and Immediacy of the Governmental Concern and Efficacy of the Policy
The majority concludes, “Linn State’s real and immediate interest in administering this [drug-testing] policy is undeniable” in light of the “massive [drug] problem in today’s society.” I find the majority’s fear-ridden rationale' to be troubling. Founded in 1961, Linn State successfully operated for fifty years before deciding in 2011 that a drug-testing policy was essen *931 tial for safeguarding its students. Despite asserting the immediate necessity of the drug-testing policy, neither Linn State nor the majority cites any specific events or studies applicable to Linn State in particular to substantiate this assertion. Rather, the majority relies on a generalized concern over drug use based on the Supreme Court’s comment in Morse v. Frederick, 551 U.S. 393, 407, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007), where it listed statistics regarding drug use amongst secondary school students and concluded drug abuse problem “remains serious today.” I find the majority’s reference to a case decided in 2007 providing drug-use statistics of secondary school students to be unpersuasive. While I certainly acknowledge drug and alcohol abuse are very serious problems, the majority’s reference to Morse does not explain why there is a real and immediate risk present at Linn State today. In the absence of empirical evidence to bolster Linn State’s special needs argument requiring suspicionless drug testing, I remain unconvinced Linn State’s “real and immediate interest in administering the [drug-testing] policy” is even plausible, let alone “undeniable.”
In light of the undiminished privacy interest and invasive drug-testing procedures, I find Linn State’s campus-wide program fails the three-prong balancing test.
Ill
For the above stated reasons, the district court did not abuse its discretion. I would affirm the district court’s order granting the students a permanent injunction from drug testing in all but the five academic programs identified.

. For the sake of simplicity and because there was no evidence presented to the contrary, I am presuming the students enrolled at Linn State are mostly adults because Linn State is a technical college. This case does not address the issue of minor students enrolled in college courses or adult students enrolled in high school courses.